**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Ditko, | No. CV-19-04442-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Fabiano Communications Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Fabiano Communications, Inc.'s ("FabCom") Motion to Strike (Doc. 41) and Defendant's Motion for Summary Judgment (Doc. 30). Both matters are now fully briefed and no party has requested oral argument. (Docs. 31, 39–40, 42–43.) For the reasons set forth below, the Court will grant both motions (Docs. 30, 41).

## I.      BACKGROUND

Plaintiff, *pro se*, filed the Complaint on May 1, 2019 in the Superior Court of Arizona in Maricopa County. (Doc. 1-4 at 3.) The Complaint asserts claims for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 (Counts I and II), and violations of the Age Discrimination in Employment Act (Count III). (*Id.* at 8.) He seeks compensatory damages, front pay, punitive damages, injunctive relief, and attorneys' fees and costs. (*Id.* at 9.) The Complaint attaches the Charge of Discrimination, dated February 19, 2016, that Plaintiff filed with the Arizona Attorney General's Office and the Equal Employment Opportunity Commission ("EEOC"), as well as the EEOC's Notice of

Right to Sue dated February 4, 2019. (Doc. 1-4 at 10–12.) Defendant removed the action to this Court on June 11, 2019. (Doc. 1.)

Plaintiff is a former Art Director of Defendant FabCom. (Doc. 31 ¶ 2.) He was hired in December 2013 at 57 years old by Mr. Brian Fabiano, the Chief Executive Officer of FabCom. (Id. ¶ 1; Doc. 1-4 ₱ 7.) Plaintiff alleges that beginning in July 2015 and lasting until Plaintiff's termination, Mr. Fabiano began to make "crude sexual innuendos" to and about Plaintiff in front of everyone in FabCom's art department. (Doc. 39-2 ¶ 27; Doc. 31 ¶ 15.) Plaintiff additionally alleges that, on two occasions, Mr. Fabiano said, "why is it that some old people refuse to embrace new technology? They don't want to learn new things. These kind of people are going to be obsolete." (Doc. 1-4 ¶ 30; Doc. 31-1, Dep. at 71:7–25, 72:1–14.) Other employees could not corroborate Plaintiff's allegations regarding Mr. Fabiano's sexually charged or ageist comments. (Docs. 31-2 ¶¶ 17–19; 31-4 ¶¶ 3–6; 31-5 ¶¶ 3–5; 31-6 ¶¶ 3–6.) Plaintiff did not formally report Mr. Fabiano's comments. (Doc. 31-1, Dep. at 61:3–7; Doc. 31-2 ¶¶ 15–16.)

Prior to Plaintiff's termination, Mr. Fabiano praised Plaintiff's work and dedication (Doc. 39-2 ¶¶ 11, 37); gave Plaintiff a $3,000 bonus at Defendant's 2014 company Christmas party (Id. ¶ 37); and increased Plaintiff's yearly compensation by $5,000 in an alleged agreement with the IRS to pay wage garnishments for unsatisfied tax debt (Id. ¶ 16). In the weeks leading up to his termination, Plaintiff claims that his work began to be rejected and reassigned away from him (Id. ¶¶ 22–23) and that Mr. Fabiano began to criticize all efforts made by Plaintiff, screaming things like "[a]ll I hear from you is can't. I'm sick of your can't." (Id. ¶ 23.)

In December 2015, Plaintiff missed 13 of the 22 days he was scheduled to work. (Doc. 31 ¶ 8; Doc 39-2 ¶ 35). Plaintiff alleges his absences were for "legit reasons." (Doc. 39-2 ¶ 35.) Plaintiff was terminated on January 19, 2016.[1] (Doc. 31 ¶ 4; Doc. 39-2 ¶ 3.)

---

[1] There is some discrepancy in the termination date alleged. Both parties cite January 19, 2016 as the date of termination, while the Severance Agreement (Doc. 31-1 at 27) states a termination date of January 18, 2016. The Court finds this discrepancy is of no consequence for its determinations here and will use January 19, 2016 as the date of termination.

Defendant cited the excessive absenteeism, along with failure to attend a training class, failure to meet work obligations and assignments, and a general lack of leadership as reasons for the termination. (Doc. 31, ¶ 4.) On January 24, 2016, Plaintiff requested a signed termination letter in triplicate from Defendant. (Doc. 31-1 at 46.) Plaintiff was then alerted by Defendant's Human Resources Director, Mark Weber, that in order to receive any severance, he would need to sign a release agreement. (Doc. 31 ¶ 10.) Plaintiff agreed to meet Mr. Weber on February 27, 2016 in a grocery store parking lot. (*Id.* ¶ 11) At that meeting, Plaintiff signed the severance agreement, which stated:

> By signing below, you acknowledge that you understand the terms of this Severance Agreement, and that it is your intent to release any claims you have or may have against FabCom, in exchange for the severance pay offered by the Company.

(Doc. 31-1 at 27).

In exchange, Plaintiff received a severance payment of $2,692.28, or the equivalent of two week's pay minus the excess paid time off Plaintiff had used. (*Id.*; Doc. 31 ¶ 12.) Thereafter, Plaintiff cashed the severance check provided to him during that meeting. (*Id.* ¶ 14.)

## II.   PLAINTIFF'S REQUEST FOR DEPOSITION TRANSCRIPT

In Plaintiff's Statement of Genuine Issues of Material Fact opposing the Motion for Summary Judgment, he requests access to the entire transcript of Defendant's deposition of Plaintiff "to support disputed statements."[2] (Doc. 39-1 at 1.) Federal Rule of Civil Procedure 30(f)(3) explains that the Rule 28 appointed officer who conducted the deposition (i.e., the court reporter) must furnish a copy of the deposition to any party or the deponent "[w]hen paid reasonable charges."[3] Neither the Court nor Defendant may provide a copy to Plaintiff without prior authorization from the court reporter—Plaintiff himself must obtain copies of the deposition transcript "by making arrangement directly with the

---

[2] Plaintiff cites Fed. R. Civ. P. 32, which relates to the use of depositions during court proceedings. That Rule is not relevant here and will accordingly not be discussed.

[3] The Court notes that Plaintiff was previously advised to familiarize himself with the appropriate procedural rules and to follow them accordingly. (*See, e.g.*, Doc. 33.) There is a Rule on point that he could have followed here to obtain a copy of the requested deposition.

court reporter." *See Brown v. Castillo*, No. CV-F-02-6018 AWI DLB P, 2006 WL 1408452, at *1 (E.D. Cal. May 22, 2006).

## III.   MOTION TO STRIKE

Rule 26(a)(1)(A)(ii), Fed. R. Civ. P. requires that parties disclose, without awaiting a discovery request, a copy or description of all documents, electronically stored information, and tangible items in its "possession, custody, or control" that it may use to support its claims or defenses. Each party must make these initial disclosures based on the information then reasonably available to it—a party is not excused from making disclosures for failure to "fully investigat[e] the case." Fed. R. Civ. P. 26(a)(1)(E). Parties are required to supplement their Rule 26(a) disclosure in a timely manner if the party finds "that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Compliance with these Rule 26 disclosure requirements is mandatory. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) (citing *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014)).

Rule 37(c)(1) gives "teeth" to the requirements of Rules 26(a) and (e). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). If a party fails to disclose information pursuant to Rule 26(a) or (e), "the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Rule provides "automatic" sanctions for certain failures to disclose to provide a "strong inducement for disclosure of material." Fed. R. Civ. P. 37(c)(1) advisory committee note (1993). The district court's discretion has "particularly wide latitude" in the Ninth Circuit to issue such sanctions. *Yeti by Molly*, 259 F.3d at 1106.

The party facing Rule 37(c)(1) exclusion sanctions bears the burden of showing that its failure to disclose the required documents or information was substantially justified or harmless. *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012); *see also*

*Yeti by Molly, Ltd.*, 259 F.3d at 1107 ("Implicit in [that Rule] is that the burden is on the party facing sanctions to prove harmlessness."). "[A] party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance." *Taft v. Am. Family Mut. Ins. Co.*, No. CV-11-2599-PHX-SMM, 2013 WL 5498226, at *3 (D. Ariz. Oct. 1, 2013) (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995)). It is "harmless when there is no prejudice to the party entitled to the disclosure." *Id.*

## A.     Analysis

On March 26, 2020, Defendant filed a motion for summary judgment alleging that Plaintiff's Title VII claims are barred by an executed release and that there are otherwise no genuine issues of material fact. (Doc. 30.) In Plaintiff's opposition to that motion, he attached numerous exhibits—namely exhibits 5.1, 6.1–6.3, 11.1–11.3, 12.1, 12.3, 12.4, 13.1–16.8, and 21–26 (the "Exhibits")—that had not been previously disclosed to Defendant and some of which are not authenticated. (Doc. 39.)

Defendant now asks the Court to exclude the Exhibits from summary judgment consideration pursuant to Fed. R. Civ. P. 37(c)(1) for failure to disclose. (Doc. 41.) Defendants alternatively argue exclusion of the Exhibits for failure to authenticate pursuant to Fed. R. Evid. 901. (*Id.*) Plaintiff argues that Defendant did not identify how the Court's consideration of the Exhibits would prejudice Defendant's position and asks the Court to allow the Exhibits as probative.[4] (Doc. 42.)

The burden of showing that the failure to disclose is substantially justified or harmless rests squarely on Plaintiff. But he offers no showing of these exceptions, stating only that he needed to provide this documentation to oppose Defendant's summary judgment motion. He offers no justifiable reason to fail to disclose or supplement the Exhibits pursuant to Rule 26(a). And in fact, all of the Exhibits were in Plaintiff's "possession, custody, or control" at the time of initial disclosures. The Court agrees with

---

[4] Plaintiff also argues the standards of Fed. R. Civ. P 12(f) motions, which are used to strike portions of pleadings under certain circumstances, and Fed. R. Evid. 201, which allows for judicial notice of certain evidence. (Doc. 42.) Neither Rule is relevant here and will accordingly not be considered.

Defendant that if the Exhibits were allowed, additional discovery may be needed. Considering the period of discovery for this case has already ended, inclusion of the Exhibits would not be harmless.[5] *See Hoffman v. Constr. Prot. Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (when late disclosure will "likely require[] the court to create a new briefing schedule and perhaps re-open discovery . . . the failure to disclose [is] not harmless").

Defendant's motion to strike (Doc. 41) is granted; exhibits 5.1, 6.1–6.3, 11.1–11.3, 12.1, 12.3, 12.4, 13.1–16.8, and 21–26 attached to Plaintiff's opposition (Doc. 39) will be stricken and not considered in ruling on the Motion for Summary Judgment.[6]

## IV.   SUMMARY JUDGMENT

The principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is thus proper if the evidence (including the pleadings, depositions, answers to interrogatories, and admissions on file, together with any declarations), when viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact is one which, if proven at trial, would result in a reasonable jury finding in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").

Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. While the moving party bears the initial burden of proof for its summary judgment motion, it does

---

[5] The Court previously extended discovery at Plaintiff's request. (Doc. 33.)
[6] Because the Exhibits are excluded pursuant to Rule 37(c)(1), the alternative issue of authentication raised by Defendant is moot.

not need to disprove matters on which the nonmovant has the burden of proof at trial. *Celotex*, 477 U.S. at 324; *Taft*, 2013 WL 5498226, at *3. The party opposing summary judgment "may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact." *Popovic v. Spinogatti*, No. CV-15-00357-PHX-JJT, 2016 WL 2893426, at *5 (D. Ariz. May 18, 2016); *see also Anderson*, 477 U.S. at 256–57 (non-movant must present affirmative evidence to defeat a properly supported motion for summary judgment).

### A.    Analysis

Plaintiff claims alleged discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). (Doc. 1.) Defendant argues that Plaintiff's Title VII claims are barred by the release executed by Plaintiff and that summary judgment should be granted because there are no genuine issues of material fact for any claim. (Doc. 30 at 1.)

### 1.    Severance Agreement and Release of Title VII Claims.

The severance agreement offered by Defendant and signed by Plaintiff on January 27, 2016 includes an accounting of Plaintiff's tenure, salary, vacation and paid time off hours accrued and used, and the amount of severance offered.[7] (Doc. 31-1 at 27.) It also includes one paragraph of text stating:

> By signing below, you acknowledge that you understand the terms of this Severance Agreement, and that it is your intent to release any claims you have or may have against FabCom, in exchange for the severance pay offered by the Company.

(*Id.*)

For a severance agreement to release a company from ADEA claims for a terminated employee over the age of 40, it must meet certain minimum requirements under the Older Workers Benefit Protection Act ("OWBPA"). *See* 29 U.S. § 626(f). Otherwise,

---

[7] The severance amount offered equaled the equivalent of two-weeks pay ($3,125.00) minus the twelve excess vacation and paid-time-off hours used by Plaintiff for a total of $2,692.28.

the waiver is not considered entered into knowingly and voluntarily. *Oubre v. Entergy Ops., Inc.*, 522 U.S. 422, 427 (1998). The Court agrees with Plaintiff, and Defendant concedes, that there is no enforceable release of his ADEA claims under the OWBPA. However, the release may be valid as to Plaintiff's other claims. *See Oubre*, 522 U.S. at 428; *Eldridge v. Pollin Hotels II, LLC*, No. CV 04-1360-HA, 2005 WL 1838958, at *5 (D. Or. Aug. 1, 2005) ("[T]he Supreme Court has indicated that a release and waiver could be unenforceable against an ADEA claim but enforceable against other claims.").

For the severance agreement release clause to validly bar Plaintiff's Title VII discrimination and retaliation claims, Plaintiff's agreement must have been "voluntary, deliberate, and informed." *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir. 1989) (quoting *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1983)). That determination is "predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Stroman*, 884 F.2d at 462 (quoting *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3rd Cir. 1988)). These indicia, based on both objective and subjective considerations, include: (1) the agreement's clarity and lack of ambiguity; (2) the plaintiff's education and business experience; (3) the plaintiff's retention of legal counsel; and (4) whether the agreement was executed in a non-coercive atmosphere. *See Dominguez v. BCW, Inc.*, 99 F. Supp. 2d 1155, 1159 (D. Ariz. 2000) (citing *Stroman*, 884 F.2d at 462). The Court must undertake a factual inquiry considering the totality of the circumstances surrounding the execution of the release. *See id.* A valid release must further "be supported by consideration, i.e., something to which a party signing the release does not have an absolute right already," such as a final paycheck.[8] *Id.* at 1159–60.

The Court finds that Plaintiff's execution of the severance agreement and release of any claims against FabCom was voluntary, deliberate, and informed. If the terms of the release unambiguously express the intent of both parties, it must be enforced. *Maier v. Pac.*

---

[8] Plaintiff does not dispute the amount of consideration (i.e., severance) offered, nor is there any evidence that the amount offered constituted anything that Plaintiff had an absolute right to already.

*Heritage Homes, Inc.*, 72 F.Supp.2d 1184, 1191 (D. Or. 1999). For a contract to be ambiguous, it must be "capable of more than one sensible and reasonable interpretation." *Id.* The plain language of the relevant clause unambiguously relates the term "release" to "severance" and clearly refers to "any" claims Plaintiff may have against FabCom. There is only one sensible and reasonable interpretation of the severance agreement release. And although it does not specifically mention Title VII claims, "an agreement need not specifically recite the particular claims waived in order to be effective." *Stroman*, 884 F.2d at 461.

Plaintiff's education and business experience further supports a finding of his voluntary, deliberate, and informed choice to release FabCom in exchange for a severance payment. Plaintiff has twenty-plus years of experience in the graphic design field and has owned and operated multiple businesses during that time. (Doc. 31-1 at 23–26; Dep. at 10:10–18.) While he may have no formal legal training, he has been a party to multiple legal actions. (*See, e.g.*, Doc. 31-1 at 41; Dep. at 29:11–20.) Plaintiff possessed the experience and skills needed to understand the plain language of the agreement stating that by signing the agreement he was waiving all legal claims against FabCom.

Plaintiff did not retain legal counsel to read the agreement or advise him of his rights concerning severance and waiver. There is no evidence presented by either party, however, that he was discouraged or precluded from doing so.[9] In the time between termination, receiving the notice from Mr. Weber that a release would be needed, and actually meeting Mr. Weber on January 27, 2016 to sign the release and receive the severance payment check, Plaintiff had ample opportunity to request a copy of the agreement and/or retain counsel to review the release and advise him of his rights.

Plaintiff contends that the atmosphere surrounding the execution of the severance release was coercive and thus not entered into voluntarily, deliberately, or in an informed

---

[9] In response to this point, Plaintiff points to the concept of *contra proferentem*, requiring that when a contract term is ambiguous, the preferred meaning should be construed against the draftsman who is responsible for ensuring the signer's understanding of the document. (Doc. 39-1 at ¶ 14.) As this Court has found, there is no ambiguity in the release's agreement.

way. He points to the location at which the release was signed—a grocery store parking lot—as evidence of the coercive atmosphere. (Doc. 10 at 2) ("The document was presented in a public venue.") The Court does not find that argument persuasive or relevant, because it is not disputed that Plaintiff himself chose this location to meet Mr. Weber to sign the severance agreement and receive the severance check. (Doc. 39-1 ¶ 11.)

Plaintiff also claims that he signed the agreement "under duress" because it was "a sign or forfeit offer" and he "was not in a position to be penniless," thus invalidating the voluntary requirement of its execution.  (Doc. 39-1 ¶¶ 11–12.) The Court is likewise not convinced by this argument. While there are no Ninth Circuit cases directly on point, other courts' findings are instructive here. "[B]oth law and policy suggest that one's personal economic burdens resulting from the loss of a job, should not constitute 'duress' for the purpose of invalidating a termination release." *Cassiday v. Greenhone & O'Mara, Inc.*, 220 F.Supp.2d 488, 492 (D. Md. 2002); *see also Gascho v. Scheurer Hosp.*, 400 Fed.Appx. 978, 983 (6th Cir. 2010) (citing Restatement (Second) of Contracts § 176 cmt. a) (plaintiff's belief of having "no choice in signing [a release] in view of the economic benefits offered and the risk of economic hardship if she declined the offer" did not alone invalidate the release, "because this kind of threat is 'an accepted part of the bargaining process'"); *Melanson v. Browning-Ferris Indus., Inc.*, 281 F.3d 272, 277 (1st Cir. 2002) ("[D]uress, without more, [may not] be inferred from merely the emotional and financial stress associated with loss of a job. To hold otherwise would be to make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses . . . .").

Plaintiff has not presented any evidence or specific facts tending to contradict Defendant's allegations that the release, for purposes of the Title VII claims, was not entered into voluntarily, deliberately, and in an informed way. He rests on the allegations in his pleadings and presents no material issue of fact for trial. The Court finds that under the totality of the circumstances, the January 27, 2016 severance agreement release is valid and Plaintiff is barred from raising any Title VII claims.

## 2.    Age Discrimination Claim Under the ADEA.

The relevant ADEA statutes makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff may present a claim of age discrimination under the ADEA using direct and/or circumstantial evidence. *Sheppard v. Davis Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012).

Direct evidence can be shown by:

> conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision. Direct evidence, which standing alone can defeat summary judgment, must be evidence directly tied to the adverse employment decision. In contrast, stray remarks not directly tied to the decision-making process are not direct evidence capable of defeating summary judgment.

*France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) (internal citations omitted). The only evidence Plaintiff presents that could in theory be considered direct are "stray remarks" allegedly made by Mr. Fabiano on two occasions. These comments are not shown to be directly tied to the decision-making process and are not capable of defeating Defendant's summary judgment motion.

To use circumstantial evidence, Plaintiff must meet the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, Plaintiff must first establish a prima facie ADEA claim. If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to provide a legitimate, non-discriminatory reason for its action. If Defendant does so, the burden then shifts back to Plaintiff to show that the reason is merely pretext for age discrimination. *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

To establish the prima facie ADEA claim, Plaintiff must show that (1) he was at least 40 years old; (2) performing his job satisfactorily; (3) he was discharged; and (4) was

1    either replaced by substantially younger employees with equal or inferior qualifications or

2    discharged under circumstances otherwise giving rise to an inference of age discrimination.

3    *See id.* The requisite degree of proof for establishing an ADEA claim on summary

4    judgment is "minimal and does not even need to rise to the level of a preponderance of the

5    evidence." *Id.* at 1211 n.4 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.

6    1994)).

7        There is no question that elements one and three of the prima facie ADEA claim

8    have been met. Defendant argues, however, that neither element two or element four can

9    be shown. The Court agrees.

10        To establish the second element of an ADEA prima facie claim, Plaintiff must show

11    that he was performing his job satisfactorily. Defendant contends that Plaintiff was not

12    performing his job adequately and that the driving force of Plaintiff's termination was his

13    "excessive absenteeism, among other things . . . [including failure] to attend training,

14    [failure to meet] work obligations and assignment, and [a] generally demonstrated . . . lack

15    of leadership." (Doc. 31 ¶ 4). Defendant presented testimony that it terminates any

16    employee that cannot meet attendance standards. (Doc. 31-2 ¶ 6; Doc. 31-3 ¶ 5.) Plaintiff

17    presents no probative evidence to the contrary, making only a bare assertion that the "policy

18    was recently created to support [Defendant's] [m]otion." (Doc. 39-1 ¶ 7.)

19        Plaintiff does not dispute missing thirteen scheduled days in December 2015 (Doc.

20    39-2 ¶ 35) but contends that he had "legitimate reasons" and "communicated with the office

21    daily" (Doc. 39-1 at 2–3). Plaintiff's argument relies on numerous emails to his supervisor,

22    many of which were sent only a few hours prior to the beginning of the workday, logged

23    excuses in iEmployee,[10] and receipts allegedly showing his need to repair his car. (*See,*

24    *e.g.*, Doc. 39-4, Exs. 3.1, 3.2, 5.3–5.4.) He states that he logged over 500 overtime hours

25    in 2014 (Doc. 39-2 at 6), relating part of his justification to FabCom's "compensatory time"

26    policy that allows some flexibility for employees who work overtime. Plaintiff's argument

27    is undercut by the language of FabCom's full compensatory time policy, which states in

---

28    [10] FabCom uses iEmployee to track paid time off, vacation days, and compensatory time. (*See, e.g.*, Doc. 39-5, Exs. 7.3, 18).

1    relevant part: "an employee may not accrue more than 100 total hours of compensatory

2    time" and "[a]ccrued compensatory time must be taken during the 30 day period following

3    the end of the workweek in which the extra hours were worked." (Doc. 39-5, Ex. 18.)

4           Plaintiff raises the argument that three of his thirteen absences in December 2015

5    were for court hearings related to felony drug charges he received in Payson, Arizona. (*See,*

6    *e.g.*, Doc. 31-1 at 41.) He states that the absences were approved by FabCom and that

7    attending court hearings are "a protected activity under [p]ublic [p]olicy." (Doc. 39-1 at 3.)

8    FabCom's paid time off (PTO) policy considers the need to miss scheduled workdays for

9    "doctor or dental appoints, jury duty, etc." but requires prior supervisor approval. (Doc.

10   39-4, Ex. 7.1) Plaintiff offers no evidence that those days off were preapproved by FabCom

11   as paid time off or otherwise. Nor has Plaintiff presented any statutory requirements or

12   "public policy" rationales mandating that a private company make accommodations for an

13   employee to take time off work to defend felony drug charges. The Court is not convinced

14   by this argument.

15          Plaintiff's explanation for missing the training class was to search for documents so

16   that he could "provide the IRS with back tax returns before January 29, 2016," adding that

17   "others in the Art Department did not attend also." (Doc. 39-2 ¶ 25.) Plaintiff offers no

18   evidence that he had prior approval to miss the training session, that other employees did

19   not attend, nor that they did not have prior approval to miss the training.

20          There is no question that Plaintiff is skilled at art direction and design, but there is

21   often more to bare skill required to be a satisfactory employee. Often, one such requirement

22   is attending work during regular hours and attending trainings as necessary. *See Valverde*

23   *v. AT&T Corp.*, No. Civ-S-03-2580 DFL JFM, 2006 WL 1319613, at *2 (E.D. Cal. May

24   15, 2006) ("Numerous courts have held that attendance at work is an essential job

25   function."). Plaintiff offers no evidence that his absences were approved or appropriate

26   under FabCom's policies. The Court finds that Plaintiff has not met his burden in proving

27   that he was performing his job satisfactorily.

28          To establish the fourth element of a prima facie ADEA claim, Plaintiff must show

that he was either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. Plaintiff has not argued that he was replaced by a substantially younger employee. Plaintiff must thus provide evidence that is "cumulatively sufficient to permit reasonable jurors to infer that [Plaintiff] was discriminated against because of his age." *Diaz*, 521 F.3d at 1211 n.4. The only evidence Plaintiff proffers is a statement allegedly made on two occasions by Mr. Fabiano: "Why is it that some old people refuse to embrace new technology? They don't want to learn new things. These kind of people are going to be obsolete." Multiple employees, including Mr. Fabiano, dispute that this comment was ever made. Even if said, this isolated comment by Mr. Fabiano does not rise to the level of sufficient evidence to infer age discrimination in Defendant's decision to terminate Plaintiff's employment. *See, e.g.*, *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (finding that comments made by company supervisors like "[w]e don't necessarily like grey hair" and "[w]e don't want unpromotable fifty-year olds around," coupled with statistical evidence showing retention and hiring of generally younger employees, did not give rise to an inference of age discrimination.)

The Court finds that Plaintiff has not presented any evidence or dispute of material fact sufficient to establish a prima facie case under the ADEA. Defendant has provided a legitimate, non-discriminatory reason for its action: namely Plaintiff's attendance issues. And Plaintiff has not made a showing that Defendant's attendance explanation for terminating Plaintiff is mere pretext for age discrimination for the same reasons discussed above. For this reason, the Court grants summary judgment on Plaintiff's ADEA claim.

///

///

///

///

///

///

## VI.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Strike (Doc. 41) is **granted.** Exhibits 5.1, 6.1–6.3, 11.1–11.3, 12.1, 12.3, 12.4, 13.1–16.8, and 21–26, attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 39), will be stricken.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 30) is **granted**.

**IT IS FINALLY ORDERED** for the Clerk of Court to enter judgment in favor of Defendant and close this case.

Dated this 24th day of August, 2020.

Michael T. Liburdi
United States District Judge